**Ernest J. DeRONDE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–84–92.**

Court of Criminal Appeals of Oklahoma.

Feb. 25, 1986.

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Ernest J. DeRonde, was convicted of Escape From Prison, in the District Court of Greer County, Case No. CRF–83–10, was sentenced to three and one-half (3½) years' in prison and taxed court costs, and he appeals.

### I

In his first assignment of error, the appellant argues that the disciplinary penalties, one imposed by the Department of Corrections for his having escaped and a subsequent conviction by a trial court for his escape, constitute a double punishment for the same offense, which violates both the double jeopardy clause of the Fifth Amendment of the United States Constitution and Oklahoma's statutory prohibition against double jeopardy, 21 O.S.1981, § 11. This assertion is clearly without merit. This Court has for many years held that administrative punishment imposed by prison officials does not render a subsequent judicial proceeding violative of the prohibition against double jeopardy. See, *Boyle v. State,* 569 P.2d 1026 (Okl.Cr.1977); *Nelson v. State,* 567 P.2d 522 (Okl.Cr.1977); and *Ex parte Kirk,* 96 Okl.Cr. 272, 252 P.2d

1032 (1953); and see also, 21 O.S.1981, § 443a.

## II

In his second assignment of error, the appellant contends that the trial court erred in refusing to grant him a new trial after it was revealed that the jury foreman, Thomas Monday, was exposed to a prejudicial remark, made by his friend Reverend Arol Stevenson, in violation of 22 O.S.1981, §§ 853, 854 and 857. On the day of appellant's trial, Stevenson and Monday happened to walk past each other in a restaurant. Stevenson testified, at the hearing on the motion for new trial, that he knew Monday was serving on a jury and jokingly said, "Well, you ought not to take much time [deliberating]. The old saying is you know they're guilty or they wouldn't be there." The trial court has broad discretion in ruling on the issue of prejudice resulting from information heard by jurors concerning the trial. See, *Wacoche v. State*, 644 P.2d 568, 572 (Okl.Cr.1982). The record establishes that the trial judge did not abuse his discretion in the instant case

because: the remark was made in jest; it was taken as a joke; Stevenson and Monday had a long history of "Kidding" with each other; the entire conversation lasted only about fifteen seconds; Monday testified that he did not subsequently think about what was said and that it did not influence his view of guilt; and Stevenson testified that he never sought to influence the jury's verdict. In our opinion, there is overwhelming evidence of guilt and there was no error requiring reversal. Accordingly, this assignment of error is without merit.

## III

In his third assignment of error, the appellant maintains that the trial court erred in not granting him a new trial because the testimony of some jurors, at the hearing on the motion for new trial, allegedly established that the jury used averaging to arrive at a quotient verdict, in violation of 22 O.S.1981, § 952(4). However, the record discloses that the jury assessed the amount of punishment by discussion and compromise,[1] not by averaging.[2] Fur-

1. The direct examination of juror Emerson K. Beekly, in pertinent part, shows there was compromise:

    Q. Was there any math involved in arriving at the three and a half? I mean, the State was asking for five and the defendant was asking for two. Did you add those together and divide by two and that's three and a half? Was there any—
    A. It was kicked around a good deal in the jury room there, and as I recall I was one of the holdouts for quite a while and then finally I compromised.
    Q. So the people that wanted the five came down and the people that wanted the two came up and there was a compromise on the three and a half?
    A. Essentially that was it, yes, sir. (Tr. 45).

2. The cross-examination of Monday, in pertinent part, establishes that there was no averaging to arrive at the verdict:

    Q. Did you in any sense draw lots or cast lots with reference to the number of years to be assessed as a penalty?
    A. I didn't hear you.
    Q. Did you do any arithmetic at all in calculating the length of time to be assessed?
    A. Not that I—I'm not sure I understand what you're asking. Anyway, the only thing that was discussed was some of them started

out with two years and some of them started out with seven and some of them was interested in five and some of them had four. That's about how the thing started out.
    Q. There were some that at first, anyway, holding out for four years?
    A. Right. One or two was on four, if I recall right, and maybe one was on five and about six or seven was on seven years. I think only one was on two years and the rest of them was about three, three to seven was the majority, the main part of it.
    Q. Mr. Monday, was there anyone who said, in effect, as I'm demonstrating here on a piece of paper, divide seven by two and you get three and a half? Was there anyone that said 'We'll do it that way,' to your recollection?
    A. I don't recall that. If they did I certainly don't recall it if they did.
    Q. Did anybody say, 'Well, let's add up those number of votes for two years and those for three years and the number of votes for a four year sentence, and so on, and divide them by twelve and we'll come out with the right amount?'
    A. No.
    Q. No averaging like that?
    A. No, there was not.

thermore, it has long been the law in this jurisdiction that the sanctity of the jury-room cannot be invaded and that jurors cannot impeach or contradict their verdict by affidavits or testimony after they have been discharged from the jury and mingled with the public. *Daniels v. State*, 554 P.2d 88 (Okl.Cr.1976) and cases cited therein; *Munn v. State*, 459 P.2d 628 (Okl.Cr.1969); *Wachoche v. State*, supra; and also see 12 O.S.1981, § 2606(B). Thus, in the instant case, the testimony of the jurors, after they had been discharged from the jury, regarding discussions which had occurred during the jury's deliberations should not have been received by the trial court since it amounted to an attempt to impeach their verdict. This assignment of error is without merit.

## IV

In his fourth assignment of error, the appellant argues that it was error for the trial court to assess court costs of $2,132.40 against him without a hearing on his ability to pay at the time of the imposition of the judgment and sentence, August 11, 1983. We find that this assignment of error is prematurely presented to this Court since appellant's ability to pay court costs, in a criminal action, is properly determined after his release from incarceration. See, for instance, *Jones v. State*, 682 P.2d 757 (Okl.Cr.1984).

For the above reasons, the judgment and sentence appealed from is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., specially concurs.

PARKS, Presiding Judge, specially concurring in results:

Although I have reached the same conclusion as to affirmance of the judgment and sentence, I feel it necessary to comment on the dilemma of the trial court in attempting to ascertain whether the jury had acted in violation of 22 O.S.1981, § 952(4). In its attempt, the trial court appears itself to have violated 12 O.S.1981, § 2606(B), which states a juror shall not testify about the jury's deliberations. However, it is a well-established principle of statutory construction that when one statute speaks specifically to an issue of controversy, it takes precedence over a statute dealing with the same subject matter in general terms. C. Sands, *Statutes and Statutory Construction*, § 51.05 (1974). Therefore, in this case, the trial court did not err in admitting the testimony of some of the jurors at the hearing on the motion for a new trial, as there was no other way to determine whether the jury had, indeed, violated the statute against the drawing of lots to reach a verdict.