**Tommy Douglas EVANS, Petitioner,**

v.

**The Honorable Preston TRIMBLE, Cleveland County District Judge, Respondent.**

**No. P–87–640.**

Court of Criminal Appeals of Oklahoma.

Nov. 24, 1987.

John M. O'Neal, Norman, for petitioner.

Wm. E. Boswell, Asst. Dist. Atty., Norman, for respondent.

**OPINION**

PARKS, Judge:

The petitioner, Tommy Douglas Evans, was charged by information on October 23, 1986, with Escape From a Penal Institution, pursuant to 21 O.S.Supp. 1983, § 443(B), in Cleveland County District Court, Case No. CRF–86–1490(T). The Information alleged that Evans unlawfully

escaped from the John Lilley Correctional Center on January 7, 1985, "while permitted to be at large on an institutional program...." (Appeal File, A–1). [The original information erroneously recited the date of escape as occurring in 1986, but this typographical error was corrected, without objection, to read 1985. (PH Tr. 4)].

The record is undisputed that petitioner was assigned to the House Arrest Program at the time of his alleged escape. After sufficient evidence was found to exist at preliminary hearing to bind petitioner over for trial, and a jury trial date was set for September 14, 1987, petitioner sought a writ of prohibition and/or mandamus from this Court on September 2, 1987. On September 4, 1987, this Court issued a stay and directed a response from the Honorable Preston Trimble or his authorized representative. On October 1, 1987, William E. Boswell, Jr., Assistant District Attorney for Cleveland County, filed a response and brief in support as the authorized representative for the Honorable Respondent. The issue presented is whether the petitioner is entitled to extraordinary relief to prevent his being tried for an escape from house arrest which allegedly occurred on January 7, 1985, prior to the effective date of a 1986 amendment to 21 O.S.Supp.1983, § 443, which for the first time specifically and expressly prohibited escapes from house arrest. At the outset, we wish to commend petitioner's court-appointed counsel, John M. O'Neal, for providing such a thorough brief and relevant supplemental materials. In order to determine the issue presented, it is necessary to examine the background and history of Section 443, prohibiting escapes from penal institutions, and the House Arrest Program in Oklahoma.

I.

Title 21 O.S.Supp.1983, § 443(B), effective November 1, 1983, governed escapes from a penal institution at the time of petitioner's alleged escape, and provided as follows:

Any person who is an inmate confined in any institution or facility operated by the Department of Corrections who escapes from said confinement, either while actually confined therein *or while permitted to be at large as a trusty,* shall be punishable by imprisonment of not less than two (2) years nor more than seven (7) years.

(emphasis added). Insofar as the undisputed facts show that the petitioner was not "actually confined" at the John H. Lilley Correctional Center, but was released to live in the Noble community under the so-called House Arrest Program (PH Tr. 6–7), petitioner's escape must fall within the emphasized language "or while permitted to be at large as a trusty" in order for his conduct to be covered by Section 443(B).

We have not found, nor have we been cited to, a statutory definition of "trusty." Thus, "we must assume the Legislature intended for [trusty] to have the same meaning as that attributed to [it] in ordinary and usual parlance." *Loffland Bros. Equip. v. White,* 689 P.2d 311, 314 (Okla. 1984). Statutory words are "to be understood in their ordinary sense, except when a contrary intention plainly appears...." 25 O.S.1981, § 1. Webster's Third New International Dictionary defines "trusty" as "a convict considered trustworthy and allowed special privileges." Trusty has also been defined as "[a] prisoner who, because of good conduct, is given some measure of freedom in and around the prison." *Black's Law Dictionary* 1358 (5th ed. 1979). In *Sweden v. State,* 83 Okl. Crim. 1, 172 P.2d 432, 434 (1946), the role of a trusty was described as follows:

This court has had occasion to learn something of the rules of conduct governing the prisoners at the state penitentiary. Those who are trusties are given a large amount of liberty, and in many instances they are sent on errands to adjoining counties. Some of them have even delivered furniture made at the state penitentiary to the State Capitol in recent months. All of these trusties were inmates at the state penitentiary regardless of where they might be sent to work. They were constructively in

the custody of the warden of the state penitentiary from the time of their reception at that institution until they receive their discharge by serving their term or as a result of the granting to them of executive clemency.

Additionally, we note that the information did not charge the petitioner with escaping while permitted to be at large as a trusty, but rather with escaping "while permitted to be at large on an institutional program...."

### A.

Respondent Boswell concedes that the 1986 amendment to Section 443(B), which expressly prohibited escapes "while assigned to the house arrest program" cannot be applied retroactively to the instant case, where petitioner was charged with escaping in January of 1985. Respondent cites five prior decisions wherein it was held that an inmate not actually confined in a penal institution could be convicted of escape under Section 443, where the inmate was temporarily outside the walls of the institution, so long as some restraint on his freedom remained. *See, e.g., Goodson v. State*, 562 P.2d 521, 525 (Okla.Crim.App. 1977); *State v. Little Raven*, 537 P.2d 448, 452–53 (Okla.Crim.App.1975); *McCoy v. State*, 536 P.2d 1309, 1312–13 (Okla.Crim. App.1975); *Kimbro v. State*, 491 P.2d 307, 308 (Okla.Crim.App.1971); *Sweden v. State*, 83 Okl.Crim. 1, 172 P.2d 432, 433–34 (1946). In *Goodson, Little Raven, McCoy* and *Kimbro*, the defendants were all inmates who, while assigned to and residing at a penal institution, escaped while temporarily on leave to receive medical treatment. In *Sweden*, the defendant's claim that his status as a trusty was a defense to an escape charge was rejected. Respondent urges that the constructive custody theory applied in the foregoing cases is sufficiently analogous to be controlling in this case. Respondent essentially contends that Section 443(B), as it existed at the time of petitioner's alleged escape on January 7, 1985, was broad enough to cover escapes from house arrest under the so-called "constructive custody" rule, and that the request for extraordinary relief should be denied. Respondent concedes that if Section 443(B) cannot be construed to cover escapes from house arrest prior to the effective date of the 1986 amendment which expressly prohibited such escapes, "then your Respondent must also agree that to continue prosecution of Petitioner would be in violation of his Constitutional rights." Brief of Respondent, at 6.

### B.

Petitioner contends that at the time he was charged with escaping from house arrest, the operation of a house arrest program in Oklahoma was unlawful, because it was not authorized by law. He argues that house arrest was not legally authorized in Oklahoma prior to June 28, 1985, when the Legislature passed 57 O.S.Supp. 1985, § 510.2, expressly providing for the implementation of, and eligibility guidelines for, a house arrest program. Petitioner concedes that arguably the house arrest program could be said to have been authorized by the Extended Limits of Confinement Act, under 57 O.S.1981, § 510.1(A)(7), which provides that the Department of Corrections:

> may extend the limits of the place of confinement of a committed offender at any of the state correctional facilities by authorizing such committed offender under special conditions to be away from such correctional facility but within the state. Such authority may be granted ... For any other reasons consistent with the reintegration of a committed offender into the community.

Title 57 O.S.1981, § 510.1(C) provides as follows:

> A committed offender is, during his absence, to be considered as in the custody of the correctional facility and the time of such absence is to be considered as part of the term of sentence. Failure to return to the facility shall be deemed an escape and subject to such penalty as provided by law.

Petitioner contends that the catch-all reintegration clause of Section 510.1(A)(7) cannot be interpreted to sanction the house arrest program prior to June 28, 1985, be-

cause: (1) Penal statutes are to be strictly construed against the state, cannot be enlarged by implication or extended by inference, and the conviction of a crime is unwarranted unless the act is within both the letter and the spirit of the prohibiting statute. *State v. Humphrey,* 620 P.2d 408, 409 (Okla.Crim.App.1980); (2) To avoid constitutional impairment an offense must be so clearly defined that any ordinary person can determine in advance what he may or may not do. *Champlin Refining Co. v. Corp. Comm'n,* 286 U.S. 210, 242–43, 52 S.Ct. 559, 568, 76 L.Ed. 1062 (1932); and (3) a statute so vague that men of common intelligence must guess at its meaning and application violates the first essential element of due process. *Cornelious v. Adkisson,* 394 P.2d 651, 653 (1964) (citing *Lock v. Falkenstine,* 380 P.2d 278, 279 (1963). Petitioner urges this Court not to extend the so-called "constructive confinement theory" to escapes from house arrest, on the ground that such extension would constitute an improper expansion of a penal statute by inference or implication, which is expressly prohibited under *Humphrey, supra.* Petitioner asserts further that his position is supported by the Legislature's amendment of the catch-all reintegration provision of Section 510.1(A)(7), effective June 28, 1985, to read "if authorized by law." In short, petitioner argues that the house arrest program was not authorized by law until June 28, 1985, when Section 510.2 was enacted to authorize the house arrest program and, therefore, the petitioner cannot be tried for an alleged escape on January 7, 1985.

Petitioner claims that the cases cited by respondent are distinguishable from the instant case. In the cited cases, the defendant was an inmate who was confined in, and resided at, a penal institution operated by the Department of Corrections, and the defendant escaped while on temporary medical leave from such confinement. Unlike the cited cases, here the petitioner was released from a penal institution and authorized to reside in a non-department of corrections facility. A Department of Corrections Operations Plan, No. OP–060101, effective November 1, 1984, lists house arrest as the lowest security grade, and defines it as where "[t]he inmate may be authorized to reside at a non-department of corrections facility while assigned to the House Arrest Program, reporting to the host facility a minimum of once a week." Petitioner contends that the terms of Section 443(B), prior to the 1986 amendment, simply did not encompass escapes from house arrest, where such inmates are not "confined" to any institution or facility operated by the Department of Corrections.

An article written by former Department of Corrections Director, Larry Meachum, in the August 1986 issue of *Corrections Today,* entitled "House Arrest: The Oklahoma Experience," sheds some light on the history behind the house arrest program in Oklahoma. Selected portions from the article read in pertinent part:

When I came to Oklahoma in 1979 as director ... the state had legislation that allowed work release, but not any other community correction programs. There was no authorization allowing leaves or furloughs even though they were granted regularly. I became concerned an incident would eventually occur that would draw attention to the program and challenge the legitimacy of offenders' presence in the community. Therefore, the Extended Limits of Confinement Bill was presented to the state legislature in 1980 to authorize what was already occurring. This bill allowed the DOC to extend the limits of confinement for [various] purposes ... and for other reasons consistent with reintegration of a committed offender....

The DOC decided to reintegrate offenders by operating a house arrest program, using the section of the legislation, "other reasons consistent with reintegration of a committed offender" as authorization ... The legislation passed with the clear understanding that house arrest would operate as a program though it was not specified in the bill ... [As a result of prison overcrowding] ... [d]uring the 1984 legislative session, the potential use of the Extended Limits of Confinement Act of 1980 and house ar-

rest was discovered ... Directions were given to expand the use of this option to manage the prison population....

When the use of house arrest was expanded in 1984 ... [t]he terms of supervision for offenders was increased to include ... regular meetings at the host facility ... [In] ... April 1985 ... a previous sex offender on house arrest raped and sodomized a young couple. An immediate challenge to the house arrest program followed. Because the term house arrest was not in the language of the law, some charged it was not a properly authorized program. Fortunately, the DOC was able to document the past decisions and mandates ... A bill was introduced to clearly authorize house arrest and place controls on the program....

Legislation enacted in 1985 introduced the term house arrest for the first time and established additional guidelines for its use....

Finally, petitioner supports his claim that the 1986 amendment was intended to change Section 443 to prohibit escapes from house arrest, and that such escapes were not previously covered by the language of Section 443, with the following argument in his brief:

Research of this matter has disclosed that [House Bill 2036–1986 Amendment to Section 443] was sought and requested by the Department of Corrections and was co-authored by the current Attorney General for the State of Oklahoma. Senate staff recordings of the reading of the Bill on the Senate floor before passage reflect the following comments by then Senator Joe Johnson from LeFlore County:

"House Bill 2036 will amend present law on escapes ... [to] add the new language ... or while assigned to the house arrest program. And further new language ... would explain or define escape for that inmate on house arrest ... So, I believe it just *changes the present law to include house arrest as far as escapes are concerned.*

*It will tighten up the law."* (emphasis added).

Brief of Petitioner, at 14.

## II.

The critical issue squarely presented, therefore, is whether escapes from house arrest were covered by Section 443(B) prior to November 1, 1986, when a 1986 amendment to Section 443 expressly prohibited and defined escapes from house arrest for the first time. For the following reasons, we answer in the negative.

First, we agree with petitioner that the extension of the so-called "constructive confinement theory" to reach escapes from house arrest, under the pre–1986 version of Section 443, would constitute an improper judicial expansion of a penal statute by inference or implication. *See State v. Humphrey,* 620 P.2d 408, 409 (Okla.Crim. App.1980). We cannot say that the former language of Section 443 is sufficient to bring the act of escaping from house arrest "within both the letter and the spirit of the prohibiting statute." *Id.* As argued by petitioner, the cases cited by the Respondent are factually distinguishable from the instant case. The cases cited by Respondent involved inmates who escaped from the custody of peace officers while temporarily on medical leave, while such inmate was assigned to and residing at a penal institution operated by DOC. Here, the petitioner was not residing at a DOC institution or facility, nor was he in the custody of a peace officer while on medical leave, awaiting return to a penal institution. Simply put, petitioner was not in "constructive confinement" in the sense contemplated by the cases recited by respondent.

Second, the former version of Section 443, with respect to escapes from house arrest, can hardly be said to comply with the due process requirements that a criminal offense be so clearly defined that any ordinary person could determine in advance what was prohibited, and that statutes creating criminal offenses must be sufficiently explicit so persons of common intelligence may understand their provisions without resorting to speculation. *See Palmer v.*

*City of Euclid,* 402 U.S. 544, 545–46, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98 (1971); *Switzer v. City of Tulsa,* 598 P.2d 247, 248 (Okla.Crim.App.1979); *Turner v. State,* 549 P.2d 1346, 1350 (Okla.Crim.App.1976); *Lock v. Falkenstine,* 380 P.2d 278, 279 (Okla.Crim.App.1963).

Third, were we to hold that Section 443 covered escapes from house arrest prior to enactment of the 1986 amendment expressly prohibiting and defining escapes from house arrest, the 1986 amendment would be rendered useless and would not add anything to Section 443. Under rules of statutory construction, the Legislature is never presumed to have done a vain and useless act. *See Farris v. Cannon,* 649 P.2d 529, 531 n. 4 (Okla.1982); *In re Supreme Court Adjudication,* 597 P.2d 1208, 1210 (Okla.1979). Moreover, the title of the 1986 Act specifically and expressly provides in pertinent part: "... MODIFYING PENALTIES FOR ESCAPE FROM PENAL INSTITUTIONS TO INCLUDE ESCAPE FROM HOUSE ARREST PROGRAM; SPECIFYING CONDITIONS WHICH WILL BE CONSIDERED ESCAPE FROM HOUSE ARREST; AND PROVIDING AN EFFECTIVE DATE [of November 1, 1986]." A statute's title is to be considered in determining legislative intent. *See Swanson v. City of Tulsa,* 633 P.2d 1256, 1257 (Okla.Crim.App.1981). Our conclusion is further supported by the comments of Senator Joe Johnson on the Senate floor before passage of the amendment, as contained in Senate staff recordings cited by petitioner: "... [I]t just *changes present law to include house arrest as far as escapes are concerned ....*" Brief of Petitioner, at 14 (emphasis in brief).

On the basis of the foregoing, we hold that Section 443 did not cover escapes from house arrest prior to November 1, 1986, the effective date of the 1986 amendment to Section 443, which expressly prohibited and defined escapes from house arrest. Accordingly, we find that the petitioner is entitled to the requested writ of prohibition to prohibit the State from further prosecuting petitioner in Case No. CRF–86–1490(T). A writ of prohibition shall issue forthwith, the prior stay of proceedings is vacated, and the above-styled cause is REVERSED and REMANDED with instructions to DISMISS.

BRETT, P.J., and BUSSEY, J., concur.