2002 OK CR 8

**Ray Lamont HUBBARD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

and

**Troy Don Cape, Petitioner,**

v.

**State of Oklahoma, Respondent.**

Nos. F–2000–638, F–2000–194.

Court of Criminal Appeals of Oklahoma.

Feb. 21, 2002.

Gerald Gibbs, Broken Bow, OK, Attorney for Defendant Hubbard, at trial.

Joe Watkins, Assistant District Attorney, Choctaw County Courthouse, Hugo, OK, Attorney for the State, at trial.

Kenneth E. Adair, Norman, OK, Attorney for Defendant Cape, at trial.

Jonathan Nichols, Assistant District Attorney, Cleveland County Courthouse, Norman, OK, Attorney for the State, at trial.

Cindy Brown Danner, Chief, General Appeals, Indigent Defense System, Norman, OK, Attorney for Appellant Hubbard, on appeal.

W.A. Drew Edmondson, Attorney General, Kellye Bates, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

Katrina Conrad–Legler, Indigent Defense System, Norman, OK, Attorney for Appellant Cape, on appeal.

W.A. Drew Edmondson, Attorney General, Sandra D. Howard, Assistant Attorney General, Oklahoma City, Ok, Attorneys for Appellee on appeal.

## SUMMARY OPINION

JOHNSON, Vice Presiding Judge.

¶1 Due to the similarity of the issues raised, we have consolidated these cases to address (1) whether the district courts' assessments of incarceration costs were arbitrary and capricious, and (2) whether the assessment of incarceration costs violates an indigent defendant's right to equal protection and due process, as guaranteed by the Fourteenth Amendment.

### I. *Hubbard v. State,* F–2000–638

¶2 Ray Lamont Hubbard was tried by a jury in Choctaw County District Court, Case No. CF–1999–35, for Murder in the Second Degree, in violation of 21 O.S.1991, § 701.8. The Honorable Willard Driesel, District Judge, presided at trial. The jury found Hubbard guilty of the lesser offense of Manslaughter in the First Degree, and set punishment at four years imprisonment. On May 2, 2000, the district court sentenced Hubbard in accordance with the jury's verdict. The court also ordered Hubbard to pay court costs of $2,193.88, $250.00 for his presentence investigation report, $5,000.00 in victim's compensation, $1,500.00 in attorney fees, and $8,600.00 to the Choctaw County Jail for the cost of his incarceration prior to sentencing. The cost of incarceration was calculated at a rate of $20.00 per day, and Hubbard was incarcerated for 430 days. On appeal, Hubbard challenges only the assessment of county incarceration costs against him.

### II. *Cape v. State,* C–2000–194

¶3 Troy Don Cape was charged with Actual Physical Control of a Vehicle While Intoxicated, After Former Conviction of Two or

More Felonies, in violation of 47 O.S.Supp. 1998, § 11–902, in Cleveland County District Court, Case No. CF–1999–1060. On January 21, 2000, Cape pled guilty pursuant to a plea agreement with the State.[1] The Honorable Tom Lucas accepted his plea and sentenced Cape to six years imprisonment and assessed $1,650.00 in incarceration costs. That same day, Cape filed a motion to withdraw his plea of guilty, or in the alternative, to reconsider the assessment of incarceration costs and requested an evidentiary hearing. A hearing on Cape's motion was held on February 16, 2000. Cape challenged the assessment of incarceration costs on several grounds. The district court denied Cape's motion, and he filed this appeal.

¶ 4 Although phrased differently, Hubbard and Cape each raise the following propositions on appeal:

1. The trial court abused its discretion by arbitrarily assessing incarceration costs without following this Court's rules or adhering to the incarceration costs statute, and

2. The assessment of incarceration costs against an indigent defendant violates the equal protection and due process clauses of the Fourteenth Amendment.

¶ 5 After thorough consideration of these propositions and the records before us on appeal, including the original records, transcripts, and briefs of the parties, we remand each case to the district court for evidentiary hearings for the reasons set forth below.

■ ¶ 6 A district court has jurisdiction to assess certain costs of prosecution on a convicted defendant. 28 O.S.1991, § 101. Title 22 O.S.Supp.1999, § 979a(A) extends the costs of prosecution to include the costs of detention in a city or county jail.

[T]he municipal attorney or district attorney shall ask the court to require a person confined in a city or county jail, for any offense, to pay the jail facility the costs of incarceration, both before and after conviction, upon conviction or receiving a deferred sentence. Costs of incarceration shall include booking, receiving and pro-

cessing out, housing, food, clothing, medical care, dental care, and psychiatric services. The costs of incarceration shall be an amount equal to the actual cost of the services and shall be determined by the chief of police for city jails, and by the county sheriff for county jails.... The costs shall not be assessed if, in the judgment of the court, such costs would impose a manifest hardship on the person, or if in the opinion of the court the property of the person is needed for the maintenance and support of immediate family....

*Id.* The district court's discretion in assessing incarceration costs is limited to determining whether assessment would create a "manifest hardship" upon the defendant, or whether the defendant's financial responsibilities to his or her dependents would make restitution impracticable. *Id.* We cannot say that this limited discretion necessarily results in arbitrary assessments. *Cf. Walters v. State,* 1993 OK CR 4, ¶ 15, 848 P.2d 20, 24–25 (Crime Victims Compensation Act properly channeled sentencing court's discretion by enumerating factors relevant to assessment).

■ ¶ 7 Because Hubbard did not object to the assessment of incarceration costs at sentencing, we review only for plain error. *Simpson v. State,* 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693. In Hubbard's case, the district court properly considered whether assessment of incarceration costs would pose a manifest hardship to Hubbard or his dependents. The court found that Hubbard had the ability to pay based on his age, health, and work experience. The court also concluded that assessment of the costs would not impose a manifest hardship on Hubbard's dependents. We find no error in the district court's determination in this regard.

¶ 8 However, the district court did not follow the procedure provided in the statute for determining the costs of incarceration. At sentencing, the district judge indicated that he had stated before in open court that the cost of incarceration was $20.00 per day. The record does not establish how this figure was determined, or whether it was determined by the county sheriff as required by

---

**1.** Two other charges, Operating a Motor Vehicle While Under Suspension, Revocation or Cancel-
lation, and Failure to Carry a Valid Security Verification Form in Vehicle, were dismissed.

§ 979a(A). We find this to be plain error, and therefore **VACATE** the amount of incarceration costs assessed with respect to Appellant Hubbard and **REMAND** this matter to the district court for an evidentiary hearing, where incarceration costs can be calculated in accordance with the applicable statute.

¶ 9 We reach a similar conclusion with respect to Appellant Cape. In Cape's case, the district court took judicial notice of a formula used by the county sheriff which, apparently, was based on one used by the United States Marshal's Service. While this procedure itself does not violate § 979a(A) because the county sheriff calculated the costs, there is no record evidence of the basis for the sheriff's calculation. We find this deviation from § 979a(A) to be plain error, and therefore **VACATE** the amount of incarceration costs assessed against Appellant Cape and **REMAND** for an evidentiary hearing where the basis for the assessment can be presented.

■■■ ¶ 10 This Court recognizes the burden that would ensue if an evidentiary hearing regarding incarceration costs were required at every defendant's sentencing proceeding. To avoid this unnecessary burden in the future, we hold the following:

1. Within thirty (30) days of this order, the respective district courts in these cases shall hold hearings to receive evidence from the county sheriff, pursuant to 22 O.S.Supp.1999, § 979a, reflecting the actual cost to the respective counties of the services provided in direct relation to the incarceration of Appellants Hubbard and Cape.

2. In all counties and municipalities, courts shall hold a hearing with the sheriff or chief of police to determine the average daily cost of incarceration in the particular jail, and shall issue an administrative order promulgating this information. This order shall be made readily available in each county or municipality, and shall be updated annually.[2] Courts may then take judicial notice of this information in assessing incarceration costs in subsequent cases.

3. Before incarceration costs are assessed in any particular case, the defendant shall be allowed to submit to the district court an affidavit regarding his present ability to pay, which the court shall consider in deciding whether assessment of these costs would impose a manifest hardship on him or his dependents. At the sentencing hearing the defendant must show, by a preponderance of evidence, that assessment of incarceration costs would create such a hardship. If the court does not so find, and assesses incarceration costs, the defendant's financial ability to pay these costs once he is released from custody (or whenever the amount is otherwise due) remains subject to judicial review under the procedures outlined in this Court's Rules. *See* Rule 8.1, *et seq., Rules of the Court of Criminal Appeals,* Title 22, Ch. 18, App. (2001). *See also McDonald v. State,* 1988 OK CR 245, ¶ 17, 764 P.2d 202, 206; *Armstrong v. State,* 1987 OK CR 176, ¶ 5, 742 P.2d 565, 567; *Jones v. State,* 1984 OK CR 70, ¶ 9, 682 P.2d 757, 759.[3]

This procedure applies only to the assessment of costs for confinement in a county or municipal jail, or a private jail operated under contract with a county or municipality, pursuant to § 979a(A) of Title 22, Oklahoma Statutes.[4]

---

2. While many means of accomplishing this task are available, this Court recommends posting the administrative order in the county or city court clerk's office, and in the county or city jail.

3. We find Cape's argument that his motion hearing resembled a "Rule 8" hearing unpersuasive. *See DeRonde v. State,* 1986 OK CR 29, ¶ 5, 715 P.2d 84, 87 (ability to pay is properly determined after release from incarceration); Rule 8.1 *et seq., Rules of the Court of Criminal Appeals,* Title 22, Ch. 18, App. (2001). Cape was not confined for willfully failing to pay incarceration costs. There is no right to appeal from a Rule 8 hearing until a final order of confinement, resulting from a defendant's willful failure to pay, has been entered.

4. We note that recent amendments to § 979a(A) contemplate costs of incarceration in private facilities operated under contract with a political subdivision. *See* 22 O.S.2001, § 979a(A).

¶ 11 In so holding, we reject Appellants' assertions that the assessment of incarceration costs under § 979a violates the Fourteenth Amendment guarantees of due process and equal protection. We begin with the presumption that the statute is constitutional, and place the burden on Appellants to demonstrate otherwise. *Clayton v. State,* 1995 OK CR 3, ¶ 15, 892 P.2d 646, 654. As for the due process argument, under the provisions of § 979a(A), the defendant has an opportunity to show why such costs should not be assessed against him in the first instance. *Cf. Bearden v. Georgia,* 461 U.S. 660, 672–73, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983) (defendant constitutionally entitled to a hearing before detention for failure to pay fines and restitution); *Honeycutt v. State,* 1992 OK CR 36, ¶ 35, 834 P.2d 993, 1000 (defendant entitled to a hearing on assessment of victim restitution under analogous statute). We find this procedure sufficient to give the defendant an opportunity to be heard on the issue.

¶ 12 As for the equal protection argument, Appellants must demonstrate that § 979a(A) either (1) impermissibly interferes with their exercise of a fundamental right, (2) operates to their peculiar disadvantage as members of a suspect class, or (3) is not rationally related to a legitimate state interest. *Clayton,* 1995 OK CR 3 at ¶ 17, 892 P.2d at 654. Appellants do not claim any fundamental constitutional right on the part of incarcerated defendants to have the costs of their imprisonment and supervision paid by taxpayers. Appellants likewise have failed to show that they are members of any historically suspect class. The narrow question before this Court, therefore, is whether requiring reimbursement from a convicted defendant for the costs of his incarceration bears some rational relationship to a legitimate state purpose. We believe it does.

¶ 13 Appellants contend that because of their indigency, they are subjected to greater financial liability in a criminal prosecution than a wealthier person who can afford to post bail. However, personal financial resources are only one factor determining whether an accused is confined prior to trial. The gravity of the offense, the accused's contacts in the community, his previous record, and his ability to receive assistance from friends and family are equally important factors, and are not related to indigency. In some cases, bail may be denied regardless of the defendant's financial status. *See* Okl. Const. art. 2, § 8; *Petition of Humphrey,* 1979 OK CR 97, ¶ 14, 601 P.2d 103, 108. Furthermore, § 979a(A) permits the district court to waive incarceration costs in cases of manifest hardship. Recouping the costs of incarceration is of legitimate concern to state and local governments. Section 979a is not designed to punish the poor; it is designed to hold accountable those who have the ability to repay these costs, and it ensures that a particular defendant will only be held accountable for the costs attributable to him. We conclude that a rational basis exists for the State, and political subdivisions thereof, to seek reimbursement for these costs.

### DECISION

¶ 14 The Judgment and Sentences of both district courts with respect to costs of incarceration are **VACATED** and **REMANDED** for evidentiary hearings not inconsistent with this opinion.

LUMPKIN, P.J: concurs in part/dissents in part.

CHAPEL, J.: concurs.

STRUBHAR, J.: concurs.

LILE, J.: concurs.

LUMPKIN, Presiding Judge: concur in part/dissent in part.

¶ 1 I dissent to the Court's decision to vacate and remand for an evidentiary hearing the judgments and sentences with respect to the costs of incarceration. Since the only issues raised contest the assessment of costs of incarceration, I find the judgments and sentences are otherwise affirmed. I concur to that implicit affirming of the judgments and sentences not relating to the cost or incarceration.

¶ 2 Under 22 O.S.Supp.1991, § 979a, the costs of incarceration "shall not be assessed if, in the judgment of the court, such costs

would impose a manifest hardship on the person, or if in the opinion of the court the property of the person is needed for the maintenance and support of immediate family." The only guidance provided to the trial court in determining the amount of jail costs is found in the language "[t]he costs for incarceration shall be an amount equal to the actual cost of the services and shall be determined by the chief of police for city jails, by the county sheriff for county jails or by contract amount, if applicable."

¶ 3 In *Hubbard*, when the trial court imposed the jail fees, it specifically found Appellant had the ability to pay based on his employability. In this regard, the court found Appellant was young, healthy, physically fit and had demonstrated his ability to work in various capacities. The court also found the imposition of the fines and costs would not pose a financial hardship on Appellant's family as he had not been supporting his 4 kids and had no legal obligation for support.

¶ 4 Further, the Judgment and Sentence shows fees to the Choctaw County Jail of $8,600.00. In the transcript, the judge states it had been previously determined in open court the cost was $20.00 a day per inmate for the Choctaw County Jail. The trial court further stated that Appellant would have 90 days from the date of his release to find a job and start paying on the fees, or make arrangements with the court clerk to work out a payment schedule. This procedure satisfied the requirements of § 979a. Therefore, remanding the case for a further evidentiary hearing is not necessary in this case. In addition, a challenge to the cost of incarceration was not raised at trial, therefore, all but plain error has been waived. *Simpson v. State*, 876 P.2d 690, 693 (Okl.Cr.1994). There is no plain error present in this case.

¶ 5 Appellant's argument that because he was indigent at the time of trial, therefore he will still be indigent after he has served his prison sentence is not persuasive. Here, the trial court specifically looked past the term of incarceration and considered Appellant's employability, and indicated a payment plan could be worked out. Further, Rule 8, *Rules of the Oklahoma Court of Criminal Appeals,*

Title 22, Ch.18, App. (1999), is in place for the failure to pay once time is served.

¶ 6 As for *Cape*, this case is a certiorari appeal; therefore, we do not even reach the issue of jail costs. Assuming arguendo, that issue is appropriate for certiorari review, § 979a does not require the trial court to set forth its calculation of incarceration costs. In *Cape*, the trial court was presented with a Verification of Jail Costs from the Cleveland County Sheriff. A letter to the judge shows the sheriff arrived at his cost of $30.00 per day per inmate based upon a formula approved by the U.S. Marshall's Service. There is no requirement in the statute for a hearing to determine the reliability of the sheriff's verification of the amount of jail costs.

¶ 7 Further, the record in *Cape* does not contain the sentencing hearing. Therefore, we do not know whether Appellant attempted to challenge the sheriff's verification or offer evidence in contradiction. This Court will not assume error from a silent record. *Ellis v. State*, 795 P.2d 107, 109 (Okl.Cr. 1990). The Verification of Jail Costs from the county sheriff and his accompanying letter of explanation were sufficient to meet the requirements of § 979a(A). Therefore, I see no reason to remand this case for an evidentiary hearing on the costs of incarceration.

¶ 8 This Court has consistently held that for purposes of payments of fines and costs, the time for determining ability to pay and/or hardship is when the obligation to pay commences, *i.e.*, after release from incarceration and the provisions of Rule 8 come into application. *See Dyer v. State*, 815 P.2d 689, 691 (Okl.Cr.1991); *DeRonde v. State*, 715 P.2d 84, 87 (Okl.Cr.1986); *Jones v. State*, 682 P.2d 757, 759 (Okl.Cr.1984) (all finding the issue of ability to pay judicially imposed fines is raised prematurely on direct appeal as the ability to pay is not to be determined until the appellant's release from incarceration). However, § 979a provides for the determination of "manifest hardship" in regards to the costs of incarceration at the time of sentencing. The term "manifest hardship" as used in this statute is not defined by the Legislature. Looking at Webster's Dictionary, "manifest" is defined as "obvious" "clearly

apparent to the sight or understanding". "Hardship" is defined as "extreme privation: suffering". Under these definitions, jail costs could not be assessed if such costs would result in obvious suffering or privation for the defendant.

¶ 9 If this Court is to set forth a directive to the district courts to follow regarding the imposition of jail costs, the procedure set out by the Legislature in § 979a should be followed. Section 979a provides that the county sheriff or chief of police is to determine and certify the actual cost of incarceration for each defendant. The district court must then adjudicate and determine if that actual cost will impose a manifest hardship through an adversarial proceeding.

¶ 10 The process set forth in the opinion seeks to establish an "average" cost of incarceration, rather than the "actual" cost as required by § 979a. The methodology required does not take into consideration the cost of medical, dental or psychiatric services required for a particular inmate during the course of his/her incarceration. The cost of incarceration can vary greatly over a 12–month period of time. The updating of costs should take place on an ongoing basis rather than just annually.

¶ 11 Further, it is the defendant who has the burden of proof as to ability to pay and manifest hardship. It is very likely that every individual sentenced to incarceration will be able to show hardship due to the incarceration itself. Therefore, proof of "manifest hardship" should be by clear and convincing evidence, not merely a preponderance of the evidence, and properly presented in an adversarial proceeding where the defendant is subject to cross-examination. In addition, the focus of the hearing should be on the ability to pay and manifest hardship, if any, occurring at the time the defendant is to start his/her payments of cost of incarceration. Further, *ex parte* affidavits have no place in a hearing to determine the facts. *See Honeycutt v. State*, 834 P.2d 993, 1000 (Okl.Cr.1992) (both the State and the defense have the opportunity to present evidence of the victim's loss and the hardship to the defendant and his family in the area of victim's compensation/restitution assessments).

¶ 12 I agree a uniform procedure should be established for the assessment of costs of incarceration. However, that procedure should follow the statute, the Rules of this Court and our prior caselaw.