2011 OK CR 19

**NESBITT**

v.

**STATE.**

No. RE–2009–851.

Court of Criminal Appeals of Oklahoma.

June 29, 2011.

**436**

W. Mark Hixson, Attorney at Law, Yukon, OK, counsel for appellant at trial.

Jenna Brown, Assistant District Attorney, El Reno, OK, counsel for the State at trial.

Mark P. Hoover, Appellate Defense Counsel, Oklahoma Indigent Defense System, Norman, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Stephanie D. Jackson, Assis-

tant Attorney General, Oklahoma City, OK, counsel for the appellee on appeal.

## *OPINION*

C. JOHNSON, Judge.

¶1 On October 20, 2008, Appellant Nesbitt, represented by counsel, entered a guilty plea to a charge of Unlawful Possession of a Controlled Substance (Cocaine Base) in Canadian County Case No. CF–2008–289, and a plea of *nolo contendere* to a charge of Domestic Abuse in Canadian County Case No. CM–2008–144. That same date, the Honorable Jack D. McCurdy, II, Special Judge, sentenced Nesbitt to three years for the drug offense, with all but the first sixty days suspended. Nesbitt received a one year suspended sentence for the domestic abuse charge and was fined $100.00. The sentences were ordered to run concurrently, and Nesbitt was assessed costs and fees of the proceedings.

¶2 On May 22, 2009, the State filed an Application to Revoke in both cases alleging Nesbitt violated various terms and conditions of his probation by committing the new offense of Domestic Abuse. On September 22, 2009, the Honorable Bob Hughey, Associate District Judge, revoked Nesbitt's suspended sentences in full.[1]

¶3 On October 7, 2009, Nesbitt filed a Petition in Error asking that this Court reverse the orders revoking his suspended sentences. On August 10, 2010, the matter was submitted to this Court for resolution. A review of Nesbitt's brief in chief reveals that he is not appealing the revocation of his suspended sentences. Rather, his appeal challenges the additional costs assessed by the District Court as a result of the revocation proceedings. Nesbitt argues the imposition of costs and fees amounts to a modification of the original judgments and sentences entered in his respective criminal cases, and that the trial court was without authority to modify those sentences by assessing further costs.

---

1. Records indicate Nesbitt was released from the custody of the Oklahoma Department of Correc-    tions on November 24, 2010.

¶ 4 Nesbitt's appeal is **DISMISSED.**

¶ 5 At a hearing where the State seeks revocation of a suspended sentence, the question is whether the previously imposed sentence should be executed, and the court makes a factual determination as to whether or not the terms of the suspension order have been violated. *See Robinson v. State,* 1991 OK CR 44, ¶ 3, 809 P.2d 1320, 1322. The consequence of judicial revocation is to execute a penalty previously imposed in a judgment and sentence. *Id.; accord Burnham v. State,* 2002 OK CR 6, ¶ 6, n. 2, 43 P.3d 387, 389, n. 2; *Degraffenreid v. State,* 1979 OK CR 88, ¶ 13, 599 P.2d 1107, 1110; *Marutzky v. State,* 1973 OK CR 398, ¶ 5, 514 P.2d 430, 431. The scope of review in a revocation appeal is limited to the validity of the revocation order executing the previously imposed sentence. Rule 1.2(D)(4), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011).

¶ 6 The issue presented in this appeal is not within the scope of an appeal of the revocation of Nesbitt's suspended sentences. Nesbitt seeks no redress of the District Court's orders directing the execution of his previously suspended sentences, nor does he allege that the District Court abused its discretion in revoking his suspended sentences in full. Rather, he claims the District Court was "without authority to modify or alter the costs and administrative fees previously assessed" at his October 20, 2008, sentencing.

¶ 7 Recitation of the following relevant facts is necessary for a proper understanding of our ruling. Nesbitt was sentenced on October 20, 2008. On November 24, 2008, the Judgment and Sentence was filed in Case No. CM–2008–144. Attached to the Judgment and Sentence was a schedule of reimbursement, designated as Attachment A, directing Nesbitt to repay to the Canadian County Court Clerk the sum of $528.50 representing "fines, costs and assessments resulting from his conviction." On December 9, 2008, the Judgment and Sentence was filed in Case No. CF–2008–289. Attached to this Judgment and Sentence was a schedule of reimbursement, also designated as Attachment A, directing Nesbitt to repay to the Canadian County Court Clerk the sum of $3,090.00 representing fines, costs, and assessments resulting from his conviction. Nesbitt makes no claim that the costs and fees originally assessed, in either case, were inaccurate or unauthorized by law.

¶ 8 Nesbitt's suspended sentences were revoked in full on September 22, 2009. In October 2009, approximately one month after his sentences were revoked, an "Amended Attachment A" was filed in Case No. CF–2008–289 indicating that Nesbitt owed $3,822.30 in fees and costs, an increase of $732.50 over the original assessment.[2] The increase in costs included $75.00 for the County Sheriff, $307.50 in court costs, $300.00 in attorney's fees, and $50.00 for the OCIS (Oklahoma Court Information System) revolving fund. A review of the District Court docket sheet, made part of the appeal record in this case, details the following expenses assessed after revocation of Nesbitt's suspended sentences:

| | |
|---|---|
| Bench warrant issued, failed to pay | $ 50.00 |
| Clerk's Bench Warrant fee | 5.00 |
| OCIS Revolving Fund | 25.00 |
| Application for Appointed Counsel | 40.00 |
| Surety bond posting | 10.00 |
| Bond initial filing jail fund fee | 25.00 |
| Court Clerk Administrative fee on collection | 2.50 |
| Court appointed attorney fee (OIDS) | 300.00 |
| Court Clerk's court appointed attorney fee | 30.00 |
| Court reporter fee on disposition | 20.00 |
| OCIS Revolving Fund | 25.00 |
| Notice of Intent to Appeal, etc. | 200.00 |
| TOTAL | $732.50 |

¶ 9 Nesbitt argues that because the costs and fees were not reflected on his account until nearly a month after the revocation proceeding, he was unable to make a contemporaneous objection to the assessment at the revocation proceeding. He seeks remand to

---

**2.** As previously noted, upon conviction in Case No. CM–2008–144, Nesbitt was assessed court costs, fees, and fines in the amount of $528.50. There was no Amended Schedule A attached to the order revoking his suspended sentence in that misdemeanor case. The docket filed as part of his appeal record in the revocation of his misdemeanor sentence reflects additional cost assessments of $622.50 as of the date this appeal was filed, for a total of $1,151.00 in assessed fines, costs, and fees. Nesbitt makes no reference to the additional costs assessed in the misdemeanor case, and it does not appear he is challenging these costs on appeal.

the District Court with instructions that all costs over and above the original assessment of $3,090.00 be stricken, claiming that the costs and fees constitute an unauthorized modification of his original judgment and sentence.

■ ¶ 10 Of particular relevance to our analysis in this case is 28 O.S.Supp.2008, § 153 titled "Costs in Criminal Cases." Subsection (L) of this statute defines the term "convicted" as follows:

L. As used in this section, *"convicted"* means any final adjudication of guilt, whether pursuant to a plea of guilty or nolo contendere or otherwise, and any deferred judgment *or suspended sentence.*

(Emphasis added).

¶ 11 Nesbitt first cites to 22 O.S.Supp.2008, § 979a(A), the statute governing the imposition of incarceration fees, in support of his claim that there can be no assessment of fees except upon conviction or entry of a deferred sentence.[3] Nesbitt misinterprets the language of that statute as excluding any costs of incarceration that might accrue pending a revocation proceeding. The statute, in relevant part, reads as follows:

A. The court shall *require* a person who is actually received into custody at a jail facility or who is confined in a city or county jail or holding facility, for any offense, *to pay the jail facility or holding facility the costs of incarceration, both before and after conviction,* upon conviction or receiving a deferred sentence. The costs of incarceration *shall be collected by the clerk of the court as provided for collection of other costs and fines,* which shall be subject to review under the procedures set forth in Section VIII of the Rules of the Oklahoma Court of Criminal Appeals, Chapter 18, Appendix of this title.

22 O.S.Supp.2008, § 979a(A) (emphasis added).

¶ 12 Section 979a(A) mandates the assessment of incarceration costs against *any* person received into custody who is convicted or receives a deferred sentence.[4] These incarceration costs serve as reimbursement for the defendant's expenses incurred while in custody. The assessments apply for expenses incurred whether they occur before conviction, after conviction, or upon conviction. If the defendant receives a deferred sentence, which is not a conviction, he is still required to pay incarceration expenses incurred before and after entry of the order deferring sentencing. The purpose of the statute is to hold defendants accountable for incarceration costs at every stage of their criminal proceedings.

¶ 13 The fallacy of Nesbitt's argument lies in his characterization of a suspended sentence as something other than a conviction. A judgment where the assessed sentence is suspended *is* a conviction. Section 979a(A) specifically authorizes assessment of incarceration costs for any confinement in the county jail, including confinement occurring after conviction. The assessment of incarceration fees is mandatory, and the statutory language requires that the court clerk "shall" collect the incarceration costs as provided for the collection of other costs and fines.

■ ¶ 14 Nesbitt was convicted and given a suspended sentence, the result of which was to forgo the execution of his sentence conditioned on his completion of probation. While on probation, Nesbitt was detained in a county jail after being arrested pending his revocation hearing. This confinement occurred "after conviction" but while he was still on probation. The assessment of incarceration costs in a revocation proceeding does not constitute an additional punishment, but rather is an administrative matter that is authorized and mandated by statute.

¶ 15 As for the remaining costs and fees assessed as a consequence of the revocation proceeding, we note that Nesbitt does not challenge the amount of the corresponding fee assessed for each of the actions specified on the District Court docket. Rather, Nesbitt only challenges the District Court's au-

---

3. The additional costs assessed on Attachment A do not specifically indicate that any of the assessed costs are incarceration fees.

4. A deferred sentence is not a conviction unless it is subsequently accelerated. *See* 22 O.S.Supp. 2010, 991c(A) & (E).

thority to assess the same in a revocation proceeding.

¶ 16 Title 28 O.S.Supp.2008, § 101, titled "Fees and Costs in Criminal Cases Part of Penalty–Enforcement by Imprisonment–Persons Unable to Pay," reads in relevant part:

The fees herein provided for the clerk of the district court and the sheriff, as provided in this act, and *all* costs in the prosecution of *all* criminal actions shall, in case of conviction of the defendant, be adjudged a part of the penalty of the offense of which the defendant may be convicted, whether the punishment for such offense be either imprisonment, or fine, or both, and fixed either by the verdict of the jury, or judgment of the court, trying the case. . . .

The *term "all costs in the prosecution of all criminal actions",* as used in this section, shall include *only* the following taxable items:

1. Court clerk's costs and fees authorized by statute;

2. Sheriff's fees;

3. Fees and mileage of witnesses; and

4. Cost deposits in the appellate court, whether on appeal, in an original proceeding or in any postconviction challenge, if waived on the basis of a pauper's affidavit.

28 O.S.Supp.2008, § 101 (emphasis added). At Title 28 O.S.Supp.2008, § 153, titled "Costs in Criminal Cases", it states:

A. The clerks of the courts *shall* collect as costs in *every* criminal case for each offense of which the defendant is *convicted,* irrespective of whether or not the sentence is deferred, the following flat charges and no more, except for standing and parking violations and for charges otherwise provided for by law, *which fee shall cover docketing of the case, filing of all papers, issuance of process, warrants, orders, and other services to the date of judgment*:

. . . .

28 O.S. Supp.2008, § 153 (emphasis added). The statute lists ten separate costs that are required to be assessed against a convicted defendant to cover the expense of providing specific items or services, all of which are related to the prosecution of a criminal matter. Cost and fee assessment statutes are related to the costs of prosecution and are meant to pass on to the parties the expense of utilizing the court system. Subsections (B) through (G) of Section 153 enumerate additional costs to be assessed and dispersed to different funds, and subsection (J) outlines where the specified collected costs are to be deposited.

¶ 17 The final statute supporting the validity of the cost assessments imposed in Nesbitt's case is 22 O.S.Supp.2004, § 1355.14, titled "Payment of Costs of Representation–Fee Schedule." Subsection (A) of this statute requires the district court, at the time of pronouncing judgment and sentence, or *any other final order,* to order any person represented by OIDS or one of its contract attorneys, to pay the costs of representation in total or in installments. The costs are to be collected by the court clerk and paid to the OIDS Revolving Fund. 22 O.S.Supp.2004, § 1355.14(B). Subsection (E) of Section 1355.14 states:

E. The court *shall assess* the following fees as the cost of representation:

5. For any merit hearing on an application to revoke a suspended sentence or accelerate a deferred sentence in a misdemeanor case . . . . . . . . . . . . . . . . . $200.00

6. For any merit hearing on an application to revoke a suspended sentence or accelerate a deferred sentence in a felony case . . . . . . . . . . . . . . . . . . . . . . $300.00

22 O.S.Supp.2004, § 1355.14(E) (emphasis added). The concluding paragraph of Section 1355.14 states: "The fees *shall be assessed* unless ordered waived upon good cause shown by the indigent person, or unless another amount is specifically requested by counsel for the indigent person and is approved by the court." *Id*

¶ 18 A review of Nesbitt's misdemeanor docket shows a $200.00 assessment for costs of representation at his revocation hearing. His felony docket reflects a corresponding charge of $300.00 for representation costs at his revocation proceeding. The assessments correspond with the statutory cost assessment schedule for individuals represented by OIDS at a revocation proceeding on the merits. It flies in the face of logic to conclude that the District Court's assessment of these

costs, assessed *only* in the event of a revocation hearing on the merits, constitutes a modification of a defendant's sentence or lies outside of the District Court's authority in a revocation proceeding.

¶ 19 Like the assessment for incarceration costs, the imposition of court costs is meant to help defray the cost of criminal prosecutions. The cost and fee assessments are designed to hold accountable those who have the ability to repay the costs of their prosecution and to ensure that a particular defendant will only be held accountable for the expenses attributable to him. They are also meant to reimburse the state for services rendered by the courts, including the expense incurred for maintaining the facilities and the court officers provided by the justice system. *See Fent v. State*, 2010 OK 2, ¶¶ 7 & 10, 236 P.3d 61, 65–66.

¶ 20 The goal of statutory construction is to discern the intent of the Legislature, which is never presumed to have done a vain and useless act. Elementary rules of statutory interpretation require us to avoid any statutory construction which would render any part of a statute superfluous or useless. *State v. District Court of Oklahoma County*, 2007 OK CR 3, ¶ 17, 154 P.3d 84, 87; *Vilandre v. State*, 2005 OK CR 9, ¶ 5, 113 P.3d 893, 896; *State v. Anderson*, 1998 OK CR 67, ¶ 3, 972 P.2d 32, 33; *Byrd v. Caswell*, 2001 OK CR 29, ¶ 6, 34 P.3d 647, 648–649; *Evans v. Trimble*, 1987 OK CR 257, ¶ 14, 746 P.2d 680, 685. A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. *Anderson*, ¶ 3, 972 P.2d at 33. This Court also considers the "natural or absurd consequences of any particular interpretation" of a statute. *Id.*

¶ 21 To accept Nesbitt's interpretation regarding cost and fee assessments in revocation proceedings requires us to ignore the legislature's specific definition of "conviction" (in relation to criminal cost and fee assessments and incarceration costs) and the language specifically mandating the assessment of attorney's fees in revocation proceedings. We would also have to ignore the numerous references to the word "conviction", and the definition of that term as it relates to costs and fees in criminal cases.

¶ 22 The statutory language for cost assessment in criminal matters hinges on the word "conviction" and defines the term to include entry of a plea which results in a suspended sentence. Conviction triggers the initial assessment of costs, which may continue to be incurred as a particular criminal matter progresses. Costs do not cease to be incurred just because a judgment and sentence has been entered. By its very nature, a suspended sentence may result in continuing, on-going court expenses related to a particular defendant's conviction. To exempt from payment of incarceration and court costs those who violate the terms and conditions of their probation pursuant to a suspended sentence would, as the State argues, lead to an absurd result.

¶ 23 This Court has previously addressed challenges to statutorily mandated costs and fees assessed in criminal cases. As long as the mandated statutory costs are authorized by statute and are reasonable, uniform, and related to the services provided, they are allowed. In numerous cases we have determined that these costs are reasonably related to the administration of the criminal justice system and the costs of prosecution and have sanctioned the costs as proper. *See State v. Ballard*, 1994 OK CR 6, ¶ 6, 868 P.2d 738, 741 (fees are authorized by statute and there is no denial of equal protection because the defendant is in the same position as any other judgment debtor); *State v. Claborn*, 1994 OK CR 8, ¶¶ 6, 7 & 10, 870 P.2d 169, 171–174 (costs consist only of those expenses directly related to a particular prosecution and costs reasonably related to a particular prosecution will be considered a cost of administering the criminal justice system, and are not part of a defendant's possible "punishment" as that term is defined at 22 O.S. § 926 which provides for a jury determination of punishment); *White v. State*, 1988 OK CR 117, ¶ 7, 756 P.2d 1251, 1252; *Armstrong v. State*, 1987 OK CR 176, ¶ 5, 742 P.2d 565, 567.

¶ 24 The statutory duty to impose fees and costs rests with the district courts. *See* 28 O.S.Supp.2007, § 101; 22 O.S.Supp.2004, § 1355.14. The authority to reduce, dismiss or waive these assessments also lies with the district courts. *See* Rule 8.1, *et seq, Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011); 22 O.S.Supp.2008, § 979a(D); 22 O.S.Supp.2004, § 1355.14(E); *Hubbard v. State,* 2002 OK CR 8, ¶ 13, 45 P.3d 96, 101. To address issues of indigency and unfair burden, the legislature has developed a procedure which comes into play if the state attempts to collect the assessed costs. That issue too must be decided by the district courts.[5]

¶ 25 It is our ruling that the cost and fee assessments, including costs of incarceration, incurred during a revocation proceeding or as a result thereof, assessed by a district court as part of a final order of revocation, are administrative in nature and are not properly presented as part of the appeal of an order revoking a suspended sentence. Nesbitt's appeal is **DISMISSED.**

### DECISION

¶ 26 Appellant's revocation appeal filed in Canadian County Case Nos. CM–2008–144 and CF–2008–289 is **DISMISSED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J., and SMITH, J.: concur.

LUMPKIN, J.: concur in part/dissent in part.

LUMPKIN, Judge: Concur in part/dissent in part.

¶ 1 I concur in the dismissal of the attempted appeal in this matter. However, I must dissent to the *dicta* that purports to be a holding in this case.

¶ 2 The Court's opinion tragically takes on an incongruous posture when it first seeks to dismiss the attempted appeal but then goes ahead to proffer an analysis and opinion in the now dismissed attempted appeal. This Court has historically made emphatic statements that this Court cannot, should not, issue advisory opinions. *See Murphy v. State,* 2006 OK CR 3, ¶ 1, 127 P.3d 1158 ("this Court does not issue advisory opinions"); *Canady v. Reynolds,* 1994 OK CR 54, ¶ 9, 880 P.2d 391, 394; ("this Court cannot otherwise issue advisory opinions"); *Matter of L.N.,* 1980 OK CR 72, ¶ 4, 617 P.2d 239, 240 ("An advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review. To offer advice in the form of an opinion would be to interfere with the responsibility of the trial court to exercise the powers confided to it"). I cannot join in the process of issuing advisory opinions which violate our rules and precedent.

¶ 3 While the analysis might be correct, in this posture it has no more legal weight than a law review article. This Court must remember and discipline itself to function in accordance with its constitutional mandate to be the court of last resort in the adjudication of appeals in criminal cases. Once the Court decides to dismiss an attempted appeal, that ends the appeal. The Court is not given the carte blanche authority to just pontificate on what the Court believes the law should be. That type of action is dangerous and without appellate discipline. Therefore, I must to dissent to that portion of the opinion which is *dicta.*

---

5. We have consistently ruled that challenging cost assessments based on inability to pay is premature pending some attempt to collect them. *See White,* ¶ 8, 756 P.2d at 1252 (costs here were not currently due and if an attempt was made to collect them at a later date, defendant could raise the issue of his indigency and inability to pay at that time); *Armstrong,* ¶ 5, 742 P.2d at 566 (costs were authorized by statute and issue of indigency was not ripe for consideration where no attempt was being made to collect the costs at the time the appeal was filed).