2012 OK CR 16

**Angela Michelle WOLF, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. C–2011–1035.**

Court of Criminal Appeals of Oklahoma.

Nov. 28, 2012.

John Greg Camp, Attorney at Law, Enid, Oklahoma, attorney for defendant at trial.

Tallena C. McMichael, Assistant District Attorney, Garfield County District Attorney's Office, Enid, Oklahoma, attorney for State at trial.

Lee Ann Jones Peters, Appellate Defense Counsel, Oklahoma Indigent Defense System, Norman, Oklahoma, attorney for petitioner on appeal.

E. Scott Pruitt, Attorney General Of Oklahoma, Jared Aden Looper, Assistant Attorney General, Oklahoma City, Oklahoma, attorneys for respondent on appeal.

### SUMMARY OPINION

SMITH, Judge.

¶ 1 Angela Michelle Wolf pled guilty to five counts of Unlawful Purchase of Pseudoephedrine While Subject to Oklahoma Methamphetamine Offender Registry Act in violation of 63 O.S.Supp.2010, § 2–701(B), after one former felony conviction, in the District Court of Garfield County, Case No. CF–2011–405.[1] In accordance with a negotiated plea the Honorable Dennis W. Hladik sentenced Wolf to fourteen (14) years imprisonment on each count, to run concurrently with one another and with Wolf's sentence in Garfield County Case No. CF–2005–457. Wolf filed a timely motion to withdraw her plea, which was denied after a hearing on November 21, 2011. Wolf filed a Petition for Writ of Certiorari in this Court on March 13, 2012. This Court directed the State to file a response, and that response was filed on June 11, 2012.

1. The State dropped two counts of the same charge as part of a negotiated plea.

¶ 2 Wolf raises one proposition of error in support of her petition:

I. In order to be constitutional, the offense of unlawfully purchasing pseudophedrine while subject to the methamphetamine registry act must be construed as having a mens rea component, and here, the factual basis was inadequate to establish such mens rea. The trial court abused its discretion by refusing to allow Petitioner to withdraw her plea of guilty when the court learned that Ms. Wolf was completely unaware that she was subject to the registry and prohibited from buying psuedophederine.

After thorough consideration of the evidence before us, including the original record, briefs, transcripts and evidence, we reverse.

¶ 3 Wolf was subject to the Methamphetamine Registry Act. 63 O.S.Supp.2010 § 2-701(B). The Act establishes a registry of persons convicted of various methamphetamine crimes, and applies to all persons convicted after November 1, 2010, and all persons on probation for any specified offense as of that date. Upon conviction, the district court clerk is required to send the name of the offender to the Oklahoma State Bureau of Narcotics and Dangerous Drugs (OSBNDD), which maintains the registry. A person subject to the registry is prohibited from buying pseudoephedrine. Every pharmacist or other person who sells, manufactures or distributes pseudoephedrine must check the registry at each purchase, and deny the sale to any person on the list. Wolf claims that, to be constitutional, the Act must provide notice to the persons who are subject to criminal prosecution under its provisions. The statute does not provide such notice, and violates the Due Process Clause. U.S. Const, Amend. XIV.

¶ 4 The State argues, first, that this issue was not properly raised in Wolf's motion to withdraw her plea, and has been waived. This is not correct. Wolf claimed in her motion to withdraw that her plea was not knowing and voluntary, and entered without understanding, because she did not know she was not allowed to buy pseudoephedrine as a result of the registry statute. In lay terms, this is exactly what she claims on appeal—that the statute is unconstitutional as applied to her because she did not know she had committed a crime when she engaged in otherwise lawful activity. Although Wolf's *pro se* language in her Motion to Withdraw was inartful, the issue is properly before the Court.

¶ 5 The State does not contest Wolf's claim that she did not know she was committing a crime by purchasing pseudoephedrine—an action which was otherwise legal.[2] The State argues, rather, that § 2-701(B) is a strict liability crime and there is no legal requirement that a person know she has violated the statute or is subject to criminal penalties—the same argument made by the prosecutor at the hearing on Wolf's motion to withdraw her plea. This interpretation of the law fails to take into account the Due Process Clause and United States Supreme Court case law. As we discuss below, when otherwise lawful conduct is criminalized, the criminal statute must provide sufficient notice for a person to know she is committing a crime. Section 2-701 contains no such provisions. There is a distinction between knowledge that one is subject to criminal penalties, and intent to commit a crime. A strict liability crime does not require any intent to commit a crime. However, due process requires notice that specific conduct is considered a criminal offense.

¶ 6 Subsection E of § 2-701 explains how OSBNDD is notified when persons are

2. The record consists of Wolf's sworn testimony at the hearing on her motion to withdraw her plea. The State did not contest any of Wolf's claims at that hearing, arguing only that the statute was a strict liability crime which was satisfied by her purchases of pseudoephedrine. The State appears to suggest that this Court should disregard the uncontested evidence at the hearing, simply because it was offered by Wolf. While we have occasionally viewed a defendant's testimony with skepticism, this Court cannot choose to disregard an uncontested record. The State implies that the trial court similarly gave Wolf's testimony little weight in denying her motion. The record does not support this claim. The trial court merely confirmed that Wolf's plea form and testimony at her guilty plea proceedings were correct—a matter not at issue here— and denied her request to withdraw her plea.

subject to the registry. However, Subsection E makes no provision for anyone to notify OSBNDD which persons currently serving probation, like Wolf, are subject to the registry. Wholly absent from the statute is any provision giving notice to a person in Wolf's position—someone on probation at the time the statute went into effect—that she is subject to the registry and thus subject to criminal penalties. In fact, the statute does not provide that court clerks notify any convicted person that their name has been submitted to the OSBNDD, or that they are subject to the registry. These omissions are the crux of Wolf's claim, and the basis of our ruling.

¶ 7 Wolf supports her Due Process claim with two Supreme Court cases, *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), and *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). *Lambert* held that a registration law which carried criminal penalties, but gave no notice to persons subject to the registration requirement, and required no proof of actual knowledge of the duty to register, violated due process. *Lambert*, 355 U.S. at 229, 78 S.Ct. at 243. *Liparota* concerned a statute prohibiting acquisition or possession of food stamps in a manner not authorized by statute or regulations, and including a criminal penalty. The Court held that due process required a showing that the defendant knew his conduct to be unauthorized: "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Liparota*, 471 U.S. at 425, 105 S.Ct. at 2088, quoting *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). *Liparota* noted that construing the statute to require knowledge of the prohibited act "is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct." *Liparota*, 471 U.S. at 426, 105 S.Ct. at 2088.

¶ 8 The State argues that *Lambert* does not apply, because it involved a statute requiring only registration. The State argues that, because *Lambert* involved a status crime—failure to register—and § 2–701 prohibits the affirmative act of buying pseudoephedrine after certain criminal convictions, there is no need for an intent requirement. *Lambert* does not support this claim. Whether the offense is purely a status crime or requires an action, the notice requirement remains. The Supreme Court framed this issue: "We must assume that appellant had no actual knowledge of the requirement that she register under this ordinance, as she offered proof of this defense which was refused. The question is whether a registration act of this character violates due process where it is applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge." *Lambert*, 355 U.S. at 227, 78 S.Ct. at 242. Section 2–701 does not require that the felon subject to the registry register; for persons convicted after November 1, 2010, the district court clerk is responsible for informing the OSBNDD that the person is subject to the registry and the OSBNDD actually puts the name on the register, while for persons serving probation, etc., on that date, the statute fails to name any person or entity who is responsible for ensuring that name is put on the registry. Nobody is responsible for notifying the convicted felon that she is subject to the registry.

¶ 9 The State also relies on language in *Lambert* noting that the Legislature may criminalize conduct alone, without regard to the intent of the perpetrator. However, in that same passage *Lambert* goes on to distinguish the passive conduct at issue there—failure to register—from "the commission of acts, or the failure to act *under circumstances that should alert the doer to the consequences of his deed.*" *Lambert*, 355 U.S. at 228, 78 S.Ct. at 243 (emphasis added). Whether or not intent is required for the criminal conduct, it is essential that the person should be alerted that she is committing a crime. Furthermore, in *Liparota*, the Supreme Court discussed strict liability "public

516

welfare" offenses, which require no intent, but involve forbidden acts or omissions. The Court noted that, in most instances, Congress "rendered criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Liparota,* 471 U.S. at 432–33, 105 S.Ct. at 2092.

¶ 10 Taken together, *Lambert* and *Liparota* suggest that, while a legislature may criminalize conduct in itself, with no intent requirement, the legislature must make some provision to inform a person that the conduct, as applied to her, is criminal. This is particularly important where the conduct in question is otherwise legal. This is precisely the circumstance here: some convicted felons are prohibited from purchasing pseudoephedrine, while others, along with the general population, are not. The criminal penalties are substantial.

■ ¶ 11 This Court has interpreted some apparent strict liability criminal statutes to require a finding of intent. Discussing the question of criminal intent, we held that the offense of Carrying a Firearm After Former Conviction of a Felony requires proof of intent or knowledge. *Williams v. State,* 1977 OK CR 119, ¶ 11, 565 P.2d 46, 48, *overruled on other grounds, Lenion v. State,* 1988 OK CR 230, 763 P.2d 381. We noted, "criminal intent is the essence of all criminal liability." *Williams,* 1977 OK CR 119, ¶ 6, 565 P.2d at 48 (citation omitted). We recognized that there are statutes whose purpose would be obstructed by a scienter requirement. *Williams,* 1977 OK CR 119, ¶ 8, 565 P.2d at 48. A court determines whether a given statute creates such a crime by interpreting the legislative intent. *Id.* We noted, "When the statute is silent, knowledge and criminal intent are generally essential if the crime involves moral turpitude, but not if it is malum prohibitum. [ ] Other elements to consider in determining the legislative intent include the subject matter of the prohibition and its manifest purpose and design, and the consequences of the several constructions to which the statute may be susceptible." *Williams,* 1977 OK CR 119, ¶ 9, 565 P.2d at 49 (quotations omitted). Wolf's case illus-

trates the consequences of treating § 2–701, with its lack of notice provisions, as a strict liability crime: a defendant who does not know she is prohibited from buying pseudoephedrine is sentenced to prison for what is otherwise lawful conduct.

¶ 12 In *Dear v. State,* 1989 OK CR 18, ¶ 6, 773 P.2d 760, 761, we held that the offense of Carrying a Weapon implicitly contained an element that the defendant must have knowledge of the crime. Citing *Williams,* we repeated that criminal intent is the essence of all criminal liability. *Id.* Wolf correctly notes that the statutes at issue in *Williams* and *Dear* are similar to § 2–701. They all begin "It shall be unlawful" and describe the prohibited conduct. *See* 63 O.S.Supp.2010. § 2–701(B); 21 O.S.2011, § 1272; 21 O.S.2011, § 1283. The brief discussion in *Williams* of *malum prohibitum,* or strict liability, crimes did not touch on whether a defendant must have notice that she is subject to prosecution for such a crime if she engages in otherwise lawful activity.

¶ 13 The State argues that the Supreme Court has upheld the constitutionality of strict liability criminal statutes, citing two cases from the 1940s. As Wolf notes, in neither of these cases was the constitutionality of a strict liability criminal statute at issue, and neither supports the State's argument.

¶ 14 In *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), the issue was whether North Carolina could refuse full faith and credit to a divorce decree issued in Nevada, if, contrary to the Nevada court's finding, North Carolina found that there was no bona fide domicile in Nevada at the time of the divorce. The question was whether the parties had committed bigamy. The Court concluded that, in seeking a divorce in Nevada when they lived in North Carolina, the petitioners assumed the risk that the Court would find they had not been domiciled in Nevada, their divorces were illegal, and any subsequent marriages in North Carolina were subject to prosecution for bigamy. The Court noted, "In vindicating its public policy and particularly one so important as that bearing upon the integrity of family life, a State in punishing particular

acts may provide that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." *Williams,* 325 U.S. at 238, 65 S.Ct. at 1099 (quotations omitted). This involves, as the Supreme Court says, ignorance of the facts—the petitioners relied on Nevada's factual findings when acting in contravention of North Carolina law. *Id.* By contrast, the issue before this Court is whether persons like Wolf, who commit an otherwise lawful act, know that the act is, for them, a crime. This is a very different question.

¶ 15 In *U.S. v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), a corporation and Dotterweich, its president and general manager, were federally prosecuted for the misdemeanor offense of shipping adulterated or misbranded drugs in interstate commerce. The corporation was acquitted, but Dotterweich was found guilty. An appellate court reversed the conviction, finding that only the corporation was the person subject to prosecution under the statute. The Supreme Court disagreed, holding that the statute embraced both corporations and, to an undefined extent but including Dotterweich, their employees. The Court explicitly noted that the central purpose of this statute was to safeguard the public welfare. *Dotterweich,* 320 U.S. at 284, 64 S.Ct. at 138. This crime falls in the category of "public offenses" discussed in *Liparota, supra,* which may carry a criminal penalty though the offender has no consciousness of wrongdoing in the transaction. *Dotterweich,* 320 U.S. at 284, 64 S.Ct. at 138. In dicta, the Court notes that, in enacting the statute, Congress placed the hardship of possible criminal prosecution "upon those who have *at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers* before sharing in illicit commerce." *Id.* (emphasis added). This is the only mention in the opinion of the strict liability nature of this offense, and nothing in the opinion discusses if or what kind of knowledge would be necessary to secure a conviction for this "public offense" crime. *Dotterweich* does not support the State's claim that the lack of notice provisions in § 2–701 is constitutional.

¶ 16 The State also argues that, even if a knowing element is required by § 2–701(B), it was satisfied in this case because Wolf knowingly purchased pseudoephedrine. This confuses knowledge that one is subject to criminal penalties—notice—with intent to commit a crime. It also misstates the crime created by § 2–701(B). The State argues earlier in its brief that Wolf's crime was buying pseudoephedrine *"after being convicted of multiple methamphetamine offenses."* Later, the State appears to argue that the crime was simple purchase of pseudoephedrine. The State had it right the first time. The question here is not whether a person subject to the registry knows that she is buying pseudoephedrine. That is, under most circumstances, a lawful act, and if (as here) the sale is not refused, the person has no reason to believe she has committed a crime. The issue is precisely whether the person subject to the registry knows that, because of that status, she is not allowed to purchase pseudoephedrine. That is the criminal offense in question. Wolf was not prosecuted and sentenced to prison because she bought pseudoephedrine. She was prosecuted and sentenced to prison because she *was prohibited by law* from buying pseudoephedrine.

¶ 17 The State also argues that ignorance of the law is no excuse. This shows a clear misunderstanding of the interplay between criminal liability and the requirements of due process. Ignorance of the law will ordinarily not protect a person from the criminal consequences of her actions. In *Lambert* the United States Supreme Court noted that this maxim is limited by due process. *Lambert,* 355 U.S. at 228, 78 S.Ct. at 243. The Court described these limits: "Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act.... [T]he principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice

for condemnation in a criminal case." *Id.* Wolf was not wholly passive—she bought pseudoephedrine. However, as far as Wolf knew this was a lawful act. The mere purchase of pseudoephedrine is not a crime, unless one is subject to § 2–701(B). The wrongdoing was created by Wolf's status as a person subject to the statute. The uncontested record shows Wolf was completely unaware that she was subject to § 2–701(B). The statute itself makes no provision that relevant persons should be informed they are subject to its requirements. This is a violation of due process.

¶ 18 The Supreme Court eloquently described the essential nature of notice that one is subject to criminal prosecution for otherwise lawful conduct. "As Holmes wrote in The Common Law, 'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.' [ ] Its severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it. Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community." *Lambert*, 355 U.S. at 229–30, 78 S.Ct. at 243–44 (citation omitted). Section 2–701 fails to meet the basic notice requirements of due process. As any notice requirement is wholly omitted from the statutory language, there is no statutory language regarding notice which this Court may interpret in a constitutional manner. This Court cannot provide constitutional language where no language exists in the statute. For this reason, we find Subsections (B) and (H) of Section 2–701 unconstitutional.

### DECISION

¶ 19 The Petition for Writ of Certiorari is **GRANTED**. The case is **REMANDED** to the District Court of Garfield County with instructions to allow Wolf to withdraw her plea and **DISMISS** the case. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2012), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J. and C. JOHNSON, J.: concur.

LUMPKIN, J.: dissent.

LUMPKIN, J., dissent.

¶ 1 With all due respect, I am compelled to dissent to this Opinion. The opinion needlessly determines that the Oklahoma Methamphetamine Offender Registry Act is unconstitutional when Petitioner had sufficient notice in the first instance.

¶ 2 First and foremost, Petitioner waived appellate review of this issue by failing to properly set it out in her motion to withdraw plea. This Court's rule on this matter is clear: "[n]o matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea." Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2012); 22 O.S.2011, § 1051(c). In *Walker v. State*, 1998 OK CR 14, ¶ 3, 953 P.2d 354, 355, this Court interpreted Rule 4.2 and stated "[w]e do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in his motion to withdraw guilty plea."

¶ 3 The Opinion's determination that Petitioner raised this issue in her motion to withdraw plea is based upon a series of assumptions. Although Petitioner testified at the hearing held on her motion to withdraw plea that she did not know that she was not allowed to buy pseudoephedrine as a result of the registry statute, she did not include this claim within her motion. Nonetheless, the opinion reads a great deal into this testimony when it determines that this claim is "exactly" the same as claiming that 63 O.S.Supp.2010, § 2–701(B) is unconstitutional as applied to her.

¶ 4 In a certiorari appeal we are reviewing the trial judge's decisions for an abuse of discretion. *Carpenter v. State*, 1996 OK CR 56, ¶ 40, 929 P.2d 988, 998. However, there is no decision of the trial judge to review in

the present case because this issue was never presented to the trial court. As Petitioner did not claim that the statute is unconstitutional in her motion, this Court should not reach the merits of her claim.

¶ 5 Even if the Court were to erroneously conduct a merits review of the issue, the opinion misinterprets the United States Supreme Court's jurisprudence on this issue. The opinion completely does away with the traditional rule that ignorance of the law is no excuse and creates a requirement that the Legislature must make some provision to inform a person that conduct is criminal for a statute to be constitutional.

¶ 6 The rule of law that "ignorance of the law is no excuse" is a fundamental principle of our justice system. *United States v. Reddick*, 203 F.3d 767, 771 (10th Cir.2000); *see also Frederick v. State*, 2001 OK CR 34, ¶ 143, 37 P.3d 908, 945 (finding every man would claim "ignorance of the law" if it were available as a criminal defense.). The United States Supreme Court has found an exception to this rule and required that the defendant have subjective knowledge of the law in question in only two circumstances.

¶ 7 First, the U.S. Supreme Court requires subjective knowledge in tax cases and currency structuring cases because both instances involve "highly technical statutes that present[ ] the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan v. United States*, 524 U.S. 184, 194–95, 118 S.Ct. 1939, 1946–47, 141 L.Ed.2d 197 (1998). Thus, in tax cases and currency structuring cases, the Court has required that the jury must find that the defendant had subjective knowledge of the applicable law or the unlawfulness of the act. *Id.*

¶ 8 Second, the U.S. Supreme Court has required subjective knowledge in the instance of a felon registration act. *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). In *Lambert*, the California ordinance in question caused it to be illegal for a convicted felon to be or remain in Los Angeles for a period of more than five days without registering. *Id.*, 355 U.S. at 226, 78 S.Ct. at 241–42. The ordinance did not require that convicted felons be given notice of the requirement to register. *Id.*

Likewise, no element of willfulness was included in the ordinance nor read into it by the California Court as a condition necessary for a conviction. *Id.*, 355 U.S. at 227, 78 S.Ct. at 242. The Court determined that Due Process limits application of the rule "ignorance of the law is no excuse" as well as a local government's police power. *Id.*, 355 U.S. at 228, 78 S.Ct. at 243. "Notice is required ... where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Id.* Because the conduct criminalized by the California statute was "wholly passive-mere failure to register" and the law "punished conduct which would not be blameworthy in the average member of the community," the U.S. Supreme Court held that "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply [were] necessary before a conviction under the ordinance [could] stand." *Id.*, 355 U.S. at 228–29, 78 S.Ct. at 243.

¶ 9 The Opinion cites *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), as espousing a requirement that the Legislature must make some provision to inform a person that conduct is criminal when it criminalizes a broad range of apparently innocent conduct. However, *Liparota* involved the U.S. Supreme Court interpreting the elements of an otherwise ambiguous federal statute under the rule of lenity. *Id.*, 471 U.S. at 423–34, 105 S.Ct. at 2087–92. The Court did not set forth any requirements of the various States or their legislatures in establishing criminal offenses. As such, *Liparota* is wholly inapplicable to the present discussion.

¶ 10 Therefore, this Court should review 63 O.S.Supp.2010, § 2–701(B), for either of the two circumstances in which the U.S. Supreme Court has required subjective knowledge. Section 2–701, is neither a highly technical statute nor does it deal with taxes or currency structuring. As such, *Bryan* does not require subjective knowledge in order for a conviction under § 2–701(B) to stand.

¶ 11 The subjective notice requirement set forth in *Lambert* is not applicable to the present case because § 2–701 does not criminalize "wholly passive" conduct. As set forth in the opinion, Petitioner's conduct was not "wholly passive, *i.e.* "Wolf was not wholly passive—she bought pseudoephedrine."

¶ 12 Although § 2–701(B) punishes conduct which would not be blameworthy in the average member of the community, the circumstances of the present case are distinguishable from those in *Lambert.* Petitioner knew that she had been convicted of the felony of conspiracy to possess pseudoephedrine with intent to manufacture methamphetamine and knew that the sale of pseudoephedrine was regulated. (O.R. 5–6). To purchase pseudoephedrine an individual must present photographic ID and all sales are tracked. (O.R. 5). Section § 2–701(G) requires that "the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control [ ] maintain a methamphetamine offender registry website available for viewing by the public." [1] Thus, § 2–701 provides an avenue for notice that was not present in *Lambert.* I find that *Lambert* is simply not applicable to the present case.

¶ 13 Even if this Court were to find that Due Process requires subjective knowledge of the prohibition in § 2–701(B), the Opinion is overly broad and needlessly declares the statute in question unconstitutional. The language within the opinion is not limited to the narrow holding of *Lambert.* Instead of requiring subjective notice for acts criminalizing passive conduct and for which the average member of the community would not be blameworthy, as done in *Lambert,* the opinion requires the Legislature to provide notice as to all criminal prohibitions that do not contain an intent requirement.

¶ 14 There is no need to declare § 2–701 unconstitutional because there is a readily available interpretation that is constitutional.

Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution. Statutes are to be liberally construed with a view to effect their objects and to promote justice. The constitutionality of a statute will be upheld unless it is clearly, palpably, and plainly inconsistent with fundamental law.

*State v. Hall,* 2008 OK CR 15, ¶ 23, 185 P.3d 397, 403 (internal quotations and citations omitted). Instead, of declaring the statute unconstitutional, this Court may simply interpret the statute to implicitly contain the element that "the person received notice that he/she was required to register as a [methamphetamine] offender." *See* Inst. No. 3–40, OUJI–CR(2d) (Supp. 2012). In *Lambert,* the U.S. Supreme Court found the felon registration statute unconstitutional only after the California court had failed to read an element of willfulness into it. *Lambert,* 355 U.S. at 227, 78 S.Ct. at 242. This Court has on prior occasions interpreted statutes that were silent to implicitly contain an element necessary to effect the intent of the legislature. *See Dear v. State,* 1989 OK CR 18, ¶ 6, 773 P.2d 760, 761 (interpreting element of "knowingly" within offense of carrying a weapon as set forth in 21 O.S.1981, § 1272): *Williams v. State,* 1977 OK CR 119, ¶ 11, 565 P.2d 46, 49, *overruled on other grounds by Lenion v. State,* 1988 OK CR 230, 763 P.2d 381 (interpreting elements of "knowing" and "willfully" in offense of carrying a firearm after former conviction of a felony as set forth in 21 O.S.1971, § 1283).

¶ 15 The statute is constitutional on its face. *See Citizens United v. FEC,* 558 U.S. 310, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (2010) (finding that the distinction between facial and as-applied constitutional challenges is both instructive and necessary for it goes to the breadth of the remedy employed by the Court). Therefore, Petitioner's challenge to § 2–701(B) may also be solved by simply requiring the trial courts to advise the defendant in all future instances that he or she is subject to the Oklahoma Methamphetamine Offender Registry Act at the time of sentencing. This item should be added to the list of

---

1. This requirement is found within subsection I of the current version of the statute. See 63 O.S.Supp.2012, § 2–701(I).

items a defendant is informed of when sentenced.

¶ 16 Regardless, I find that Petitioner had sufficient notice. Petitioner knew that she did not stand in the same position as the average member of the community. Petitioner acknowledged that she had been convicted of the offenses of unlawful possession of controlled dangerous substance with intent to distribute and conspiracy to possess pseudoephedrine with intent to manufacture methamphetamine in the District Court of Garfield County Case Numbers CF–2004–133 and CF–2005–457, respectively. (O.R. 4, 6, 21; Mtn. Tr. 13). Petitioner knew that pseudoephedrine is highly regulated and its sale is tracked by both local pharmacists as well as law enforcement officers. The Oklahoma Legislature provides notice of all Legislative enactments through the publication of the Oklahoma Statutes and annual cumulative supplements thereto. 75 O.S.2001, §§ 171–180; 75 O.S.Supp.2009, § 191. The provisions of § 2–701 were published to the public in 63 O.S.Supp.2010, § 2–701 and were further made available to the public on the Oklahoma State Courts Network webpage.

¶ 17 Finally, that portion of the opinion that finds that § 2–701(H) is unconstitutional is *dicta*.[2] Petitioner was not charged or convicted of any acts under § 2–701(H). Instead, she was charged and pled guilty to five violations of § 2–701(B). The Information, Plea of Guilty Summary of Facts form, and the Judgment and Sentence all clearly reflect that the offenses were in violation of 63 O.S. § 2–701(B). (O.R. 1, 21, 31). Petitioner does not cite to, discuss, or argue that § 2–701(H) is unconstitutional. This Court does not issue advisory opinions. *Murphy v.*

*State*, 2006 OK CR 3, ¶ 1, 127 P.3d 1158, 1158.

"unless we are vested with original jurisdiction, all exercise of power must be derived from our appellate jurisdiction, which is the power and the jurisdiction to review and correct those proceedings of inferior courts brought for determination in the manner provided by law. . . . An advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review. To offer advice in the form of an opinion would be to interfere with the responsibility of the trial court to exercise the powers confided to it. We will not do so absent constitutional or statutory authority."

*Canady v. Reynolds*, 1994 OK CR 54, ¶ 9, 880 P.2d 391, 394, *quoting Matter of L.N.*, 1980 OK CR 72, ¶ 4, 617 P.2d 239, 240. There is no constitutional or statutory authority for this Court to review the constitutionality of a statute upon its own suggestion. As such, the constitutionality of § 2–701(H) is not properly before the Court and any determination of this issue constitutes an advisory opinion. I cannot join in the process of issuing advisory opinions which violate our rules and precedent. *See Nesbitt v. State*, 2011 OK CR 19, ¶¶ 2–3, 255 P.3d 435, 441 (Lumpkin, J., concurring in part/dissenting in part).

---

2. I note that there was not a subsection H under 63 O.S.Supp.2010 § 2–701. Instead, the statute ended with subsection G. In 2012, the Legislature moved the language that was in subsection G to subsection H. *Id.;* 63 O.S.Supp.2012 § 2–701(H).